# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>Kevin R. Crystal and<br>Jeanne F. Crystal,<br><br>Debtors. | Bankruptcy Case<br>No. 12-40047-JDP |
| R. Sam Hopkins,<br>Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>Crystal 2G Ranch, Inc.,<br><br>Defendant. | Adv. Proceeding<br>No. 13–08031-JDP |

## MEMORANDUM OF DECISION

**Appearances:**

James A. Spinner, Service & Spinner, Pocatello, Idaho, Attorney for
Plaintiff R. Sam Hopkins, Chapter 7 Trustee.

MEMORANDUM OF DECISION – 1

Aaron J. Tolson, Ammon, Idaho, Attorney for Defendant Crystal 2G
Ranch, Inc.

## *Introduction*

Plaintiff, chapter 7[1] trustee R. Sam Hopkins ("Trustee"), commenced

this adversary proceeding against Defendant Crystal 2G Ranch, Inc.

("Ranch") to avoid two alleged fraudulent transfers by Debtors Kevin and

Jeanne Crystal ("Debtors") to Ranch.  Dkt. No. 1.  The matter came before

the Court for trial on May 8, 2014.  At the conclusion of the evidence and

testimony, the parties agreed to present their closing arguments at a June 3,

2014, hearing.  At the conclusion of that hearing, the Court took the issues

under advisement.  This Memorandum of Decision represents the Court's

findings of fact and conclusions of law and decision concerning those

issues.  Rule 7052.[2]

----

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all Rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

[2] The Court has jurisdiction over this action pursuant to 28 U.S.C.
§ 1334(b).  It is a core proceeding under 28 U.S.C. § 157(b)(2)(H).  The parties
expressly consented to, and have otherwise acknowledged, this Court's
constitutional authority to enter a final judgment in this action, subject only to
appellate review under 28 U.S.C. § 158, in a written stipulation filed on August

MEMORANDUM OF DECISION – 2

*Facts*

Debtors filed their chapter 7 petition on January 13, 2012.  Bankr.

No. 12-40047-JDP, Dkt. No. 1; Exh. 100.  Prior to that time, Debtors had

owned a farm property in Jefferson County, Idaho containing

approximately 92 acres, commonly known as 3576 East 200 North, Rigby,

Idaho 83442.  Exhs. 102 and 103.  This property was acquired in 2004 by

Debtors from a relative for a total purchase price of $210,000.  Exh. 104.[3]  A

portion of this real property, consisting of about 6 acres, which included a

residence, was transferred by Debtors to the Crystal Family Living Trust

on or about June 7, 2007, for $91,000.  Exh. 105.  The Crystal Family Living

Trust paid part of the purchase price in cash, and gave Debtors a

promissory note in the amount of $36,185.50 for the balance, secured by a

deed of trust.  This note was payable to Debtors in monthly installments.

---

29, 2013.  Dkt. No. 8.  *See Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)*, 702 F.3d 553 (9th Cir. 2012), *aff'd sub nom., Exec. Benefits Ins. Agency v. Arikson*, 134 S. Ct. 2165 (2014).

[3] Debtors' home and 2.2 acres is contiguous to this tract of land and was purchased by the Debtors from the same relative in 1990.  Debtors' home and acreage is not the target of Trustee's avoidance claims.

MEMORANDUM OF DECISION – 3

On April 25, 2011, Debtors transferred the remainder of the real property, approximately 84 acres of farmland (the "Farm"), which was typically planted with alfalfa and barley, as well as their rights to receive payments from the Crystal Family Living Trust on the note, to Ranch. Ranch is an Idaho Corporation, formed by Jared Crystal ("Jared"), Debtors' only son, an Arizona accountant. Exh. 110. Jared testified that Ranch was created solely for the purpose of receiving the transfer of the Farm and the right to receive payments under the Crystal Family Living Trust note.

At the time of the transfer of the Farm,[4] it was subject to a debt secured by a mortgage in the amount of $173,000. Exh. 112. Debtors and Ranch, through Jared, agreed that Ranch would assume responsibility to pay the outstanding mortgage on the Farm. Exh. 106. Ranch provided no other consideration to Debtors for the transfer of the Farm.

---

[4] Mr. Crystal testified that Debtors had began discussing the transfer of the Farm to Jared Crystal in late 2010. However, the paperwork evidencing the sale was not completed until April 2011.

MEMORANDUM OF DECISION – 4

While neither Mr. Crystal, nor Jared, was particularly clear at trial about when the transfer of the right to receive payments under the promissory note was completed, they both testified that it was likely around the same time as the transfer of the Farm. It is also unclear from the record how much remained to be paid to Debtors on the note at the time of the transfer. Ranch provided no additional consideration to Debtors in exchange for the transfer of Debtors' right to receive these payments.[5]

Mr. Crystal testified that it was always Debtors' intention to transfer the Farm to Jared. He explained that the Farm had been in their family for over 100 years, however, for many years leading up to the transfer, both Mr. and Mrs. Crystal had experienced health issues, which caused them considerable financial difficulty. Mr. Crystal testified that it was these

---

[5] While the transfer of ownership of the Farm by Debtors to Ranch, and their transfer to Ranch of Debtors' right to receive payments on the note, were distinct, the Court finds, and Trustee has not disputed, that Debtors and Ranch intended them to be components of the same transaction. While the Court hereafter refers to Debtors' "transfers," it is with this understanding.

MEMORANDUM OF DECISION – 5

health issues that caused he and his wife to decide to transfer the Farm to

Jared in late 2010.  While the reason for making the transfer in April 2011,

Mr. Crystal stated, was to keep the Farm in the family, it also appears that

in May 2011, at least one creditor had obtained a judgment against

Debtors and would have been able to attach Debtors' equity in the Farm, if

any, and Debtors' interest in the note to satisfy that judgment.  Exh. 101.

In addition, Mr. Crystal stated that by transferring away Debtors' interest

in the Farm and note, it allowed Debtors to qualify for Medicaid, although

it was not made entirely clear to the Court how this was so.

Mr. Crystal testified that in April 2011, he valued the Farm at $2,000

per acre, or approximately $168,000 for the 84 acres, although he did not

seek a professional appraisal.  While he conceded that Debtors paid $2,000

per acre when they originally purchased the Farm in 2004, Mr. Crystal

testified he felt that the value of the Farm was approximately equal to the

mortgage balance in April 2011.

Trustee's witness, Paul Blaskovich, an Idaho relator who specializes

MEMORANDUM OF DECISION – 6

in residential properties, testified that he currently values the Farm at $3,000 per acre, or $252,000, based upon his research. However, the witness did not provide the Court with any written report or other information to explain his analysis and valuation of the Farm. In addition, on cross examination by Ranch's counsel, Mr. Blaskovich acknowledged he could not dispute Mr. Crystal's conclusion that, at the end of 2010 and beginning of 2011, $2,000 per acre was an appropriate value for the Farm, and that its value had substantially increased since that time.

Mr. Crystal testified that, after the transfers to Ranch, he continued to help work the Farm, and paid some of its expenses, but that he scaled back his work due to his health problems. He stated that other family members, as well as Jared, helped work the Farm since the transfers. Jared testified that he came to Idaho several times a year to oversee its operations, perform work, and to write checks to pay for the Farm's expenses. He also consulted with Mr. Crystal frequently by phone to make decisions regarding the Farm's operation.

MEMORANDUM OF DECISION – 7

*Analysis and Disposition*

At bottom, the Court must decide whether Debtors transferred the

Farm and note payments to Ranch to prevent their creditors from reaching

these valuable assets, and whether Debtors received adequate

consideration from Ranch in light of the values of those assets.  Trustee

argues that he is entitled to avoid the transfer of both the Farm, and the

right to receive payments on the note, because the transfers were either

actually fraudulent for purposes of § 548(a)(1)(A), or constructively

fraudulent under § 548(a)(1)(B).  As to the actual fraud claim under

§ 548(a)(1)(A), Trustee points out that in April 2011, Debtors had a number

of creditors pursuing them, and in addition, Debtors wanted to be able to

qualify for Medicaid, but could not do so if they owned the assets.

Trustee also point out that, after the transfers, Mr. Crystal continued to

actively participate in managing the Farm.  These facts, Trustee urges,

shows Debtors intended to place the Farm and note payments beyond the

reach of their creditors.

MEMORANDUM OF DECISION – 8

If his proof fails on that theory, Trustee argues that, to satisfy § 548(a)(1)(B), Debtors were insolvent, or rendered so, at the time of the transfers, something that Debtors and Ranch have not actively contested, and Debtors did not receive "reasonably equivalent value" from Ranch for the Farm and note payments.

Debtors deny that, in making the transfers, they intended to hinder, delay, or defraud their creditors.  Instead, Debtors insist it was their long-time plan to transfer the Farm, which had been in their family for many generations, to their only son, Jared.  They also argue that the transfers were necessary, due to their declining health, because they could no longer manage the Farm.  Further, Debtors argue the transfers were not constructively fraudulent because the value of the Farm and remaining note payments were roughly equal to the benefit they received from the transfers—relief from the obligation to pay the mortgage balance due on the Farm.

///

MEMORANDUM OF DECISION – 9

**I.  Applicable Law**

A trustee may avoid a prepetition transfer of an interest of the

debtor in property that is "intentionally fraudulent, [] § 548(a)(1)(A), or

constructively fraudulent, [] § 548(a)(1)(B)." *Official Comm. of Unsecured*

*Creditors v. Hancock Park Capital II, L.P. (In re Fitness Holdings Int'l, Inc.)*, 714

F.3d 1141, 1145 (9th Cir. 2013) (citing *BFP v. Resolution Trust Corp.*, 511 U.S.

531, 535 (1994)).

A.  Actual Fraud: § 548(a)(1)(A)

Section 548(a)(1)(A) provides, in relevant part:

> The trustee may avoid any transfer . . . of an interest of
> the debtor in property, or any obligation . . . incurred
> by the debtor, that was made or incurred on or within 2
> years before the date of the filing of the petition, if the
> debtor voluntarily or involuntarily— (A) made such
> transfer or incurred such obligation with actual intent
> to hinder, delay, or defraud any entity to which the
> debtor was or became, on or after the date that such
> transfer was made or such obligation was incurred,
> indebted[.]

The trustee bears the burden of proving, by a preponderance of the

evidence, all of these statutory elements. *Crawforth v. Wheeler (In re*

MEMORANDUM OF DECISION – 10

*Wheeler)*, 444 B.R. 598, 605 (Bankr. D. Idaho 2011) (citing *Murrietta v. Fehrs*

*(In re Fehrs)*, 391 B.R. 53, 73 (Bankr. D. Idaho 2008)).  The determination of

whether a debtor intended to hinder, delay, or defraud creditors in

transferring property is a question of fact.  *Rainsdon v. Kirtland (In re*

*Kirtland)*, 12.1 IBCR 9, 12 (Bankr. D. Idaho 2012).

Rarely is there direct evidence of a debtor's actual intent to hinder,

delay, or defraud; however, courts may infer such intent from the

circumstances surrounding the transfer.  *Hasse v. Rainsdon (In re Pringle)*,

495 B.R. 447, 467 (9th Cir. BAP 2013) (citing *Acequia, Inc. v. Clinton (In re*

*Acequia, Inc)*, 34 F.3d 800, 805-06 (9th Cir. 1994)).   Inferences of a debtor's

actual fraudulent intent may be drawn from the presence in the facts of

certain traditional "badges of fraud:"

> Among the more common circumstantial indicia of
> fraudulent intent at the time of the transfer are:
> (1) actual or threatened litigation against the debtor;
> (2) a purported transfer of all or substantially all of the
> debtor's property; (3) insolvency or other
> unmanageable indebtedness on the part of the debtor;
> (4) a special relationship between the debtor and the
> transferee; and, after the transfer, (5) retention by the

MEMORANDUM OF DECISION – 11

debtor of the property involved in the putative transfer.
The presence of a single badge of fraud may spur mere
suspicion; the confluence of several can constitute
conclusive evidence of actual intent to defraud, absent
"significantly clear" evidence of a legitimate
supervening purpose.

*In re Acequia, Inc.*, 34 F.3d at 806 (citing *Max Sugarman Funeral Home, Inc. v.

A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir. 1991)).  "Thus, once a trustee

establishes indicia of fraud in an action under [§] 548 (a)(1), the burden

shifts to the transferee to prove some 'legitimate supervening purpose' for

the transfer at issue."  *In re Acequia, Inc.*, 34 F.3d at 806.

B.  Constructive Fraud: § 548(a)(1)(B)

Section 548(a)(1)(B) provides, in relevant part:

The trustee may avoid any transfer . . . of an interest of
the debtor in property . . . that was made or incurred
within 2 years before the date of the filing of the
petition, if the debtor voluntarily or involuntarily— . . .
(B)(i) received less than a reasonably equivalent value
in exchange for such transfer or obligation; and (ii)(I)
was insolvent on the date that such transfer was made
or such obligation incurred, or became insolvent as a
result of such transfer or obligation . . . .

This Court has recently summarized the analytical approach required

MEMORANDUM OF DECISION – 12

under this section:

> Whether "reasonably equivalent value" has been
> received is determined through a two-step process.
> *Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 441
> (Bankr. D. Idaho 2008).  First, the Court must determine
> that a debtor received value in exchange for a transfer.
> *Id.*  "Value," for the purpose of § 548, is defined to
> mean "property, or satisfaction or securing of a present
> or antecedent debt of the debtor." § 548(d)(2).

> Second, the Court must determine whether the value
> received by a debtor is reasonably equivalent to the
> value of the transferred property.  *In re Jordan*, 392 B.R.
> at 441.  In analyzing reasonably equivalent value, the
> Court looks at values as of the time of the transfer.
> *Krommenhoek v. Natural Res. Recovery, Inc. (In re Treasure
> Valley Opportunities, Inc.)*, 166 B.R. 701, 704 (Bankr. D.
> Idaho 1994).  All of the circumstances surrounding the
> transfer must be analyzed and the Court reviews the
> transfer for its net effect on the bankruptcy estate funds
> available for the debtor's unsecured creditors.  *In re
> Jordan*, 392 B.R. at 441.  If a party gets 'roughly the
> value it gave,' it has received reasonably equivalent
> value, and indirect financial benefits constitute value if
> they confer an economic benefit on the debtor.  *Id.* at
> 441-42 & n.26.  The trustee . . . has the duty of showing
> that reasonably equivalent value was not received, and
> of proving all of the other § 548(a)(1)(B) elements.  *See
> Murietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 73 (Bankr. D.
> Idaho 2008).

MEMORANDUM OF DECISION – 13

*In re Kirtland*, 12.1 I.B.C.R. at 12-13.

## II.  Application of Law to Facts

In this case, the parties do not dispute that the transactions between Debtors and Ranch were "transfers" for purposes of § 548(a)(1).  Nor do they contest that the transfers were made within the two years proceeding the filing of Debtors' bankruptcy petition.  The parties instead focus their arguments on whether Trustee has carried his burden of proving facts to satisfy the other requirements of § 548(a)(1)(A) or (B) so as to avoid these transfers.

### A.  Actual Fraud: § 548(a)(1)(A)

Several of the *In re Acequia, Inc.* badges of fraud are present in this case.  In the spring of 2011, Debtors were under increasing collection pressure from their creditors; at least one creditor was close to obtaining a money judgment against them at the time.  *See* Exh. 101.  The proof also shows that Debtors were insolvent at the time of the transfers, due to their mounting medical expenses and other outstanding debt.  And by these

MEMORANDUM OF DECISION – 14

transactions, Debtors transferred their most valuable assets to Ranch, a

company created and controlled solely by Jared, their son.

On the other hand, Debtors did not transfer all of their assets to

Ranch in 2011; they indeed retained their house and the two acres on

which it was located.  In addition, through their agreement with Ranch,

Debtors obtained relief from their largest debt:  the obligation to pay the

mortgage on the Farm.[6]  Further, Debtors did not retain possession and

control of the Farm, although Mr. Crystal testified that he continued to

work on the Farm until his health issues required him to stop.

Obviously, the evidence is subject to more than one interpretation.

After considering the entirety of the record, though, on balance, the Court

is persuaded, as a matter of disputed fact, that despite their precarious

financial status, Debtors had a legitimate, non-fraudulent purpose for

making both transfers.  Mr. Crystal impressed the Court as a

---

[6] Trustee contends that, as a matter of law, Debtors were not excused
from their legal liability on the debt and mortgage for the Farm via this transfer.
While the Court assumes this is correct, it finds that Debtors believed in good
faith their transfer accomplished this goal.

MEMORANDUM OF DECISION – 15

straightforward, credible witness.  His testimony about Debtors' long-

standing desire to keep the Farm "in the family," and about Debtors'

declining health and the challenges they faced in managing the Farm,

while perhaps simplistic, was persuasive, and his demeanor on the

witness stand was transparently honest.  Based primarily upon that

testimony, the Court concludes that Debtors' transfers were made in good

faith and not in an attempt to hinder, delay, or defraud their creditors.  In

short, the Court finds that Debtors made these transfers to their son

primarily because they were quite ill and uncertain of their future, so as to

keep the Farm in the family, as had been their plan all along.

By the same token, the Court concludes that Debtors' transfer of the

right to receive payments under the note to Ranch was not an attempt to

hinder, delay, or defraud Debtors' creditors, but rather, an effort to

compensate their son for the possible difference they perceived between

the value of the Farm and Ranch's agreement to pay the outstanding

balance on the mortgage on the Farm.  Debtors genuinely believed there

MEMORANDUM OF DECISION – 16

was no equity in the Farm at the time of its transfer to Ranch. While

Debtors' logic and math in also transferring the note payments to Ranch

was perhaps obtuse, their intentions were genuine and benign.

The fact that after the transfers, Mr. Crystal continued to perform

some work on the Farm, and to occasionally pay its operating expenses,

including some modest amounts for his compensation, using Ranch

checks pre-signed by Jared, also does not persuade the Court that there

was any mischief afoot.  Indeed, this was merely a pragmatic approach to

dealing with Jared's absence from the Farm, and an example of a father

helping out with the family farming operation when he could.  The

services performed by Mr. Crystal, and any Farm funds he controlled or

received after the transfers, were, in the Court's view, insignificant in

number and amount.

In sum, while reasonable minds could differ about their intent,

based upon the above findings, the Court concludes that Trustee has not

proven that Debtors transferred either the Farm or note payments to

MEMORANDUM OF DECISION – 17

Ranch with the requisite intent to hinder, delay, or defraud their creditors.

Therefore, Trustee may not avoid either transfer under § 548(a)(1)(A).

B.  Constructive Fraud: § 548(a)(1)(B)

For purposes of § 548(a)(1)(B), the parties do not dispute Debtors were insolvent at the time of, or were rendered insolvent by, the target transfers.  At issue is whether Debtors received "reasonably equivalent value" for what they gave up.  The Court concludes that they did.

Having considered the circumstances surrounding the transfers, and the net effect on Debtors' creditors resulting from them, the Court concludes Trustee has not carried his burden to prove Debtors did not receive reasonably equivalent value in early 2011 in exchange for the transfers.  To show that Debtors parted with assets worth more than any benefit they received from the transfers, Trustee relies heavily on the testimony of Mr. Blaskovich, a realtor who acknowledged that his specialty is marketing residences, not farms.  Even so, he opined that the current value of the Farm was $3,000 per acre based upon his fairly

MEMORANDUM OF DECISION – 18

cursory research, which revealed few comparable sales, and required him

to make significant "adjustments" to extract any relevant information

concerning the subject property, the Farm.  And while the value of the

Farm now, as compared to that in April 2011 is only arguably relevant, the

witness's testimony was rendered completely equivocal when Mr.

Blaskovich's expressed reluctance to disagree with Mr. Crystal's estimate

that the value of the Farm at the time of the transfers had been $2,000 per

acre.  Given his unwillingness to dispute Mr. Crystal's lower value

estimate in 2011, Mr. Blaskovich's testimony shows, at most, that the value

of the Farm has trended upward since it was transferred to Ranch, a

conclusion that seems apparent enough given recent general

improvements in the agricultural economy in eastern Idaho.

    As opposed to showing that the transfer did not net Debtors

"reasonably equivalent value," the evidence instead establishes that

Debtors received "roughly the value" of the Farm via Ranch's agreement

that it would assume the obligation to pay the mortgage going forward.

MEMORANDUM OF DECISION – 19

According to Mr. Crystal, the value of the Farm was $168,000 in April

2011.  At that time, the balance due on the mortgage was $173,000.

*See* Exh. 112.  And while the arithmetic is not precise, Debtors' transfer to

Ranch of amounts owed under the note can be viewed as an effort by the

parties to make up the difference between this discrepancy.  The Court

concludes that this sort of approximate equivalency is sufficient to

insulate the transfers from avoidance.

Simply put, because the Court prefers Mr. Crystal's opinion of value

of the Farm at the time of the transfer, as compared to the less-focused

testimony offered by Trustee's witness, the Court concludes that Trustee

has not established that the transfers may be avoided under § 548(a)(1)(B).

*Conclusion*

As explained above, Trustee failed to carry his burden of proving

that the transfers of the Farm and note payments to Ranch should be

avoided.  A judgment will therefore be entered in favor of Ranch.

*///*

MEMORANDUM OF DECISION – 20

Dated:  July 3, 2014

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 21